**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**BUREAU OF CONSUMER FINANCIAL
PROTECTION AND THE STATE OF
ARKANSAS**                                                    **PLAINTIFFS**

v.                          Case No.  4:20-cv-01445-KGB

**ALDER HOLDINGS, LLC**                                             **DEFENDANT**

## ORDER

Plaintiffs the Bureau of Consumer Financial Protection ("Bureau") and the State of Arkansas ("Arkansas") *ex rel*. Leslie Rutledge, Attorney General, commenced this civil action on December 11, 2020, to obtain permanent injunctive and monetary relief and civil penalties from defendant Alder Holdings, LLC ("Alder").  The Complaint alleges violations of the Fair Credit Reporting Act ("FCRA") § 615, 15 U.S.C. § 1681m, and Regulation V's rule regarding Duties of Users Regarding Risk-Based Pricing ("Risk-Based Pricing Rule"), 12 C.F.R. § 1022.70 *et seq*., in connection with the defendants' selling of home-security and alarm system monitoring services.

Plaintiffs and Defendant agree to entry of this Stipulated Final Judgment and Order, without adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the conduct alleged in the Complaint.

**THEREFORE, it is ORDERED:**

### FINDINGS

1.      This Court has jurisdiction over the parties and the subject matter of this action under 12 U.S.C. § 5565(a)(1) and 28 U.S.C. §§ 1331, 1345.

2.      Venue is proper because Alder is located, resides, or does business in this district. 12 U.S.C. § 5564(f).

3. Defendant neither admits nor denies any allegations in the Complaint, except that, for purposes of this Order, Defendant admits the facts necessary to establish this Court's jurisdiction over it and the subject matter of this action.

4. Defendant waives all rights to seek judicial review or otherwise challenge or contest the validity of this Order and any claim it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order.  Each Party agrees to bear its own costs and expenses, including, without limitation, attorneys' fees.

5. Entry of this Order is in the public interest.

## DEFINITIONS

6. The following definitions apply to this Order:

   a. **"Consumer Report"** has the meaning provided in the FCRA, 15 U.S.C. § 1681a(d), and any amendments thereto.  As of the date of entry of this Order, "Consumer Report" is defined under the FCRA as any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purposes authorized under 15 U.S.C. § 1681b.

   b. **"Consumer Reporting Agency"** or **"CRA"** has the meaning provided in the FCRA, 15 U.S.C. § 1681a(f), and any amendments thereto.  As of the

date of entry of this Order, "Consumer Reporting Agency" is defined under the FCRA as any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity that, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

c.  **"Credit"** has the meaning provided in the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691a(d), and any amendments thereto. As of the date of entry of this Order, "Credit" is defined under ECOA as the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor.

d.  **"Creditor"** has the meaning provided in ECOA, 15 U.S.C. § 1691a(e), and any amendments thereto. As of the date of entry of this Order, "Creditor" is defined under ECOA as any individual, corporation, government or governmental subdivision or agency, trust, estate, partnership, cooperative, or association that regularly extends, renews, or continues credit or regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit.

e. **"Credit score"** has the meaning in the FCRA, 15 U.S.C. § 1681g(f)(2)(A), and any amendments thereto. As of the date of entry of this Order, "Credit score" is defined under the FCRA as a numerical value or a categorization derived from a statistical tool or modeling system used by any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity that makes or arranges a loan to predict the likelihood of certain credit behaviors, including default (and the numerical value or the categorization derived from such analysis may also be referred to as a "risk predictor" or "risk score").

f. **"Defendant"** means Alder Holdings, LLC and its successors and assigns.

g. **"Effective Date"** means the date on which the Order is entered by the Court.

h. **"Enforcement Director"** means the Assistant Director of the Office of Enforcement for the Bureau, or his or her delegate.

i. **"Material terms"** has the meaning in Regulation V, 12 C.F.R. § 1022.71(n), and any amendments thereto. As of the date of entry of this Order, "Material terms" is defined under Regulation V as the financial term that varies based on information in a consumer report and that has the most significant financial impact on consumers, such as a deposit required in connection with credit extended by a telephone company or utility or an annual membership fee for a charge card.

j. **"Materially less favorable"** has the meaning in Regulation V, 12 C.F.R. § 1022.71(o), and any amendments thereto. As of the date of entry of this

        Order, "Materially less favorable" under Regulation V means, when applied to material terms, that the terms granted, extended, or otherwise provided to a consumer differ from the terms granted, extended, or otherwise provided to another consumer from or through the same individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity, such that the cost of credit to the first consumer would be significantly greater than the cost of credit granted, extended, or otherwise provided to the other consumer.  For purposes of this definition, factors relevant to determining the significance of a difference in cost include the type of credit product, the term of the credit extension, if any, and the extent of the difference between the material terms granted, extended, or otherwise provided to the two consumers.

k.    **"Related Consumer Action"** means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Defendant based on substantially the same facts as described in the Complaint.

l.    **"Risk-Based Pricing Notice"** is the notice that must be provided to a consumer under Regulation V, 12 C.F.R. § 1022.72, when a person or an organization, including a corporation, partnership, proprietorship, association, cooperative, estate, trust, or government unit both: (1) uses a consumer report in connection with an application for, or a grant, extension, or other provision of, credit to that consumer that is primarily for personal, family, or household purposes; and (2) based in whole or in part

on the consumer report, grants, extends, or otherwise provides credit to that consumer on material terms that are materially less favorable than the most favorable material terms available to a substantial proportion of consumers from or through that person.

## CONDUCT PROVISIONS

## I.

## Conduct Requirements

**IT IS FURTHER ORDERED that:**

7. Defendant and its officers, agents, servants, employees, and attorneys, and all other persons or entities in active concert or participation with any of them, who have actual notice of this Order, whether acting directly or indirectly, are hereby permanently restrained and enjoined from violating § 615(h) of the FCRA, 15 U.S.C. § 1681m(h), and the Risk-Based Pricing Rule, 12 C.F.R. § 1022.70 *et seq*.

8. If Defendant (a) uses a consumer report in connection with an application for, or a grant, extension, or other provision of, credit to a consumer that is primarily for personal, family, or household purposes, and (b) based in whole or in part on the consumer report, grants, extends, or otherwise provides credit to that consumer on material terms that are materially less favorable than the most favorable material terms available to a substantial proportion of consumers from or through Defendant, then Defendant must:

    a. Provide the consumer with a Risk-Based Pricing Notice before consummation of the credit transaction.

    b. Include in the Risk-Based Pricing Notice:

i. A statement that a consumer report (or credit report) includes information about the consumer's credit history and the type of information included in that history;

ii. A statement that the terms offered, such as the annual percentage rate, deposit, or pre-payment requirements have been set based on information from a consumer report;

iii. A statement that the terms offered may be less favorable than the terms offered to consumers with better credit histories;

iv. A statement that the consumer is encouraged to verify the accuracy of the information contained in the consumer report and has the right to dispute any inaccurate information in the report;

v. The identity of each consumer reporting agency that furnished a consumer report used in the credit decision;

vi. A statement that federal law gives the consumer the right to obtain a copy of a consumer report from the consumer reporting agency or agencies identified in the notice without charge for 60 days after receipt of the notice;

vii. A statement informing the consumer how to obtain a consumer report from the consumer reporting agency or agencies identified in the notice and providing contact information (including a toll-free telephone number, where applicable) specified by the consumer reporting agency or agencies;

 viii. A statement directing consumers to the Web site of the Bureau of Consumer Financial Protection to obtain more information about consumer reports; and

 ix. If a credit score of the consumer to whom a person grants, extends, or otherwise provides credit is used in setting the material terms of credit:

  1. A statement that a credit score is a number that takes into account information in a consumer report, that the consumer's credit score was used to set the terms of credit offered, and that a credit score can change over time to reflect changes in the consumer's credit history;

  2. The credit score used by the person in making the credit decision;

  3. The range of possible credit scores under the model used to generate the credit score;

  4. All of the key factors that adversely affected the credit score, which shall not exceed four key factors, except that if one of the key factors is the number of enquiries made with respect to the consumer report, the number of key factors shall not exceed five;

  5. The date on which the credit score was created; and

  6. The name of the consumer reporting agency or other person that provided the credit score.

      c.      Disclose the Risk-Based Notice in a clear and conspicuous manner. For example, in the case of an electronic disclosure, use a method, such as a pop-up box, which must require customers to indicate that they read and understood the notice (*e.g.*, selecting a button in an app that will only be available once the customer has read the notice).

## II.

## Compliance Plan

**IT IS FURTHER ORDERED that:**

9.    Within 90 days of the Effective Date, Defendant must submit to the Enforcement Director for review and determination of non-objection a comprehensive compliance plan designed to demonstrate to the Bureau that Defendant's conduct complies with the Risk-Based Pricing requirements of the FCRA and Regulation V and the terms of this Order (Compliance Plan). The Compliance Plan must include, at a minimum:

      a.      Detailed steps for addressing each action required by this Order;

      b.      A proposal for training that will be provided to Defendant's employees designed to ensure that they comply with the FCRA and Regulation V's risk-based pricing requirements; and

      c.      Specific timeframes and deadlines for implementation of the steps described above.

10.    The Enforcement Director will have the discretion to make a determination of non-objection to the Compliance Plan or direct Defendant to revise it. If the Enforcement Director directs Defendant to revise the Compliance Plan, Defendant must make the revisions and resubmit the Compliance Plan to the Enforcement Director within 60 days.

11. After receiving notification that the Enforcement Director has made a determination of non-objection to the Compliance Plan, Defendant must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Compliance Plan.

## MONETARY PROVISIONS

### III.

### Order to Pay Civil Money Penalty

**IT IS FURTHER ORDERED that:**

12. Under § 1055(c) of the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5565(c), by reason of the violations of law alleged in the Complaint and based on the agreement of the parties, and taking into account the factors in 12 U.S.C. § 5565(c)(3), Alder must pay a civil money penalty of $600,000 to the Bureau. Under 12 U.S.C. § 5565(c)(4), the amount Alder must pay will be remitted by $100,000 if Alder pays that amount as a penalty to the State of Arkansas in *Arkansas ex rel. Rutledge v. Alder*, 60CV-18-2188, Pulaski County Circuit Court, for related conduct.

13. Within 120 days of the Effective Date, based on the agreement of the parties, Defendant must pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

14. The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by § 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

15. Defendant must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, based on the agreement of the parties, Defendant may not:

   a. Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

   b. Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

  16. To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Defendant may not argue that Defendant is entitled to, nor may Defendant benefit by, any offset or reduction of any compensatory monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund.  If the court in any Related Consumer Action offsets or otherwise reduces the amount of compensatory monetary remedies imposed against Defendant based on the civil money penalty paid in this action or based on any payment that the Bureau makes from the Civil Penalty Fund, Defendant must, within 30 days after entry of a final order granting such offset or reduction, notify the Bureau, and pay the amount of the offset or reduction to the U.S. Treasury.  Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action, based on the agreement of the parties.

## IV.

### Additional Monetary Provisions

**IT IS FURTHER ORDERED that:**

  17. In the event of any default on Defendant's obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding

amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

18. Defendant relinquishes all dominion, control, and title to the funds paid to the fullest extent permitted by law, and no part of the funds may be returned to Defendant.

19. The facts alleged in the Complaint will be taken as true without further proof in any subsequent litigation by or on behalf of the Bureau in a proceeding to enforce this Order, including the Bureau's rights to any payment or monetary judgment under this Order.

20. Under 31 U.S.C. § 7701, Defendant, unless it already has done so, must furnish to the Bureau its taxpayer-identification numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

21. Within 30 days of the entry of a final judgment, consent order, or settlement in any Related Consumer Action, Defendant must notify the Enforcement Director of the final judgment, consent order, or settlement in writing. That notification must indicate the amount of redress, if any, that Defendant paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid.

## COMPLIANCE PROVISIONS

### V.

### Reporting Requirements

**IT IS FURTHER ORDERED that:**

22. Defendant must notify the Bureau of any development that may affect compliance obligations arising under this Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this

Order; the filing of any bankruptcy or insolvency proceeding by or against Defendant; or a change in Defendant's name or address. Defendant must provide this notice, if practicable, at least 30 days before the development, but in any case no later than 14 days after the development.

23. Within 7 days of the Effective Date, Defendant must:

   a. Designate at least one telephone number and email, physical, and postal addresses as points of contact that the Bureau may use to communicate with Defendant;

   b. Identify all businesses for which Defendant is the majority owner, or that Defendant directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

   c. Describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales.

24. Defendant must report any change in the information required to be submitted under Paragraph 23 at least 30 days before the change or as soon as practicable after learning about the change, whichever is sooner.

25. Within 90 days of the Effective Date, and again one year after the Effective Date, Defendant must submit to the Enforcement Director an accurate written compliance progress report sworn to under penalty of perjury (Compliance Report), which, at a minimum:

   a. Lists each applicable paragraph and subparagraph of the Order and describes in detail the manner and form in which Defendant has complied with each such paragraph and subparagraph of this Order;

   b. Describes in detail the manner and form in which Defendant has complied with the Compliance Plan; and

   c. Attaches a copy of each Order Acknowledgment obtained under Section VI unless previously submitted to the Bureau.

## VI.

## Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED that:**

  26. Within 7 days of the Effective Date, Defendant must submit to the Enforcement Director an acknowledgment of receipt of this Order, sworn under penalty of perjury.

  27. Within 30 days of the Effective Date, Defendant must deliver a copy of this Order to each of its board members and executive officers, as well as to any managers, employees, service providers, or other agents and representatives who have responsibilities related to the subject matter of the Order.

  28. For 5 years from the Effective Date, Defendant must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section V, any future board members and executive officers, as well as to any managers, employees, service providers, or other agents and representatives who will have responsibilities related to the subject matter of the Order before they assume their responsibilities.

  29. Defendant must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. § 7001 *et seq.*, within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

  30. Within 90 days of the Effective Date, Defendant must provide the Bureau with a list of all persons and their titles to whom this Order was delivered through that date under

Paragraphs 27 and 28 and a copy of all signed and dated statements acknowledging receipt of this Order under Paragraph 29.

## VII.

## Recordkeeping

**IT IS FURTHER ORDERED that:**

31. Defendant must create and retain all documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau. Defendant must retain these documents for at least 5 years after creation and make the documents available to the Bureau upon the Bureau's request.

## VIII.

## Notices

**IT IS FURTHER ORDERED that:**

32. Unless otherwise directed in writing by the Bureau, Defendant must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "*CFPB v. Alder Holdings, LLC*, Case No. 4:20-cv-01445," and send them by overnight courier or first-class mail to the below address and contemporaneously by email to Enforcement_Compliance@cfpb.gov:

> Assistant Director for Enforcement
> Bureau of Consumer Financial Protection
> ATTENTION: Office of Enforcement
> 1700 G Street, N.W.
> Washington D.C. 20552

33. The Enforcement Director may, in his or her discretion, modify any non-material requirements of this Order (*e.g.*, reasonable extensions of time and changes to reporting

15

requirements) if he or she determines good cause justifies the modification. Any such modification by the Enforcement Director must be in writing.

## IX.

## Compliance Monitoring

**IT IS FURTHER ORDERED that:**

34. Within 14 days of receipt of a written request from the Bureau, Defendant must submit additional Compliance Reports or other requested information, which must be sworn under penalty of perjury; provide sworn testimony; or produce documents.

35. For purposes of this Section, the Bureau may communicate directly with Defendant, unless Defendant retains counsel related to these communications.

36. Defendant must permit Bureau representatives to interview any employee or other person affiliated with Defendant who has agreed to such an interview. The person interviewed may have counsel present.

37. Nothing in this Order will limit the Bureau's lawful use of civil investigative demands under 12 C.F.R. § 1080.6 or other compulsory process.

## X.

## Release

38. The Bureau releases and discharges Defendants from all potential liability for violations of law that the Bureau has or might have asserted based on the practices described in the Complaint, to the extent such conduct occurred before the Effective Date and the Bureau knows about it as of the Effective Date. The Bureau may use the practices described in the Complaint in future enforcement actions against Defendants and their affiliates, including, without limitation, to establish a pattern or practice of violations or the continuation of a pattern or practice of

violations or to calculate the amount of any penalty. This release does not preclude or affect any right of the Bureau to determine and ensure compliance with this Order, or to seek penalties for any violation of this Order.

## XI.

## Retention of Jurisdiction

**IT IS FURTHER ORDERED that:**

39. The Court will retain jurisdiction of this matter for the purpose of enforcing this Order.

It is so ordered this 4th day of August, 2021.

Kristine G. Baker
United States District Judge